Brands LLC. I believe they're the company that declared bankruptcy filed for bankruptcy that company or its member I believe that company. Okay, that's my understanding and as I discussed earlier I'll forward a letter to the court advising on the how is it related to the defendants in this case? Well, it's not related to to my knowledge is it's not related at all to MRA holding or mantra films I do think it has some relationship to Joseph Francis But he might own the stock. He might own part of the LLC. Yeah, I cannot speak to that. I don't represent GGW Brands But I I could look into that if the court no, I just yeah, I don't know that I only represent mantra films and MRA holdings and to my knowledge. They have nothing to do with an alleged video And you also represent. Mr. Francis, right? Correct Now You said 131 shows GGW Brands LLC. It doesn't really does it? Says GGW GGW Brands. We don't know that the trade name. I like this your honor if you look carefully under the warning sign It does it yeah, I could look very carefully but I would need a yeah, it's very very difficult but in the record itself I think it's a little bit more Clear. I apologize The only other thing if I may just respond briefly I am NOT familiar with anything in the record regarding Francis service on Francis I know it was discussed earlier to my knowledge It's not in the appendix and I don't know if it does exist at all in the record I mean counsel's representations of this conversation, correct? His declaration is there in his declaration? Counsel's declaration. Yeah, but if that's not in counsel's declaration to my knowledge Not on the motion to vacate at least The only the last remaining issue I just wanted to briefly touch on I know beyond my briefly due process I would like to mention That judge Ambrose mentioned the due process distinction. I just like to point out in general When a plaintiff chooses the jurisdiction to file a complaint He loads up the complaint with all kinds of allegations in the complaint Ultimately courts recognized the Supreme Court has recognized in the mclaugh decision We discussed earlier that he should retain the the burden of proving jurisdiction by a preponderance And it's it's our contention that if we allow but in order to have that done you have to engage In other words, he made out the allegations and nobody has yet Rebutted them. I mean he's got to feel like this is like a rope-a-dope defense You're going to you know not respond then try to get it the default Judgment, you know Vacated and then this is all gonna go back and forth. He would much rather have dealt with this way back when Right, but under Third Circuit precedent and all the circuits, they all agreed that you could wait for a default judgment I'm not saying that happened here, but I'm just responding to that argument You are entitled to wait for the default judgment and then challenge it on the lack of jurisdiction I'm just explaining that but you may have if we decide to go that way the burden of showing it that in fact There is lack of personal jurisdiction Thank you record at a 137 is the Declaration of Council for the plaintiff that says they sent So there's something is that controversial anyway In in Mr. Francis's declaration. He claims that he never received anything from anyone. All right All right, thank you, thank you council I'll take it under advisement call our next case made a versus fairly Dickinson University I May please the court. I'm Benjamin light. I'm here on behalf of the plaintiff appellant pile meta I'd like to reserve three minutes for rebuttal if that's okay, please grant We're here today because miss meta was a student in fairly Dickinson's PhD program She ran some trouble. It's detailed in the brief Her advisor came to her it was a professor emeritus at FDA ran into some trouble It's a brief description of the facts of the case So I'm obviously going to go into the more your honor But I wanted to point out right off the bat that this case is about Inferences whether or not the district court gave the plaintiff all the inferences to what she was entitled are the summary judgment standard And under the McDonald Douglas framework, and I maintain that the district court did not do that The first fact that's really Sticks out in the case is that her advisor professor eminence came to her and said you are getting railroaded You're being treated differently and the woman who's leading the charge has a racial bias Where is the word railroaded in the appendix? I believe in the appendix. She calls it a witch-hunt so that that's what I'm referring to I didn't Slightly different term, but maybe which one's better. I think it might be So this is not something that my client six months later thought wow I must have been discriminated against this was while the process was ongoing and Obviously her problems related to her participation in a practical clinic She was in training to be a psychologist The clinic was intended to give her hands-on experience in testing people for various disabilities in this case It was a learning disability or ADHD. What's your evidence that? Tiersky made the remark that It said she made my evidence is professor Gibbs Hearing that statement at a faculty meeting Relaying that statement to us in a deposition Yeah Tiersky is an agent however of FDU I mean all of the acts in the case Undertaken by Tiersky were taken in the scope of her employment But to get it in you have to show it's an opposing party under federal law of evidence 801 d 2 I agree your honor, but an institution or a corporation can only act through its employees So the statement by a CEO is certainly going to be attributed to a company That's you don't have you didn't depose Tiersky ask her and deficit do you say this oh we deposed her she denied it I mean there obviously there was a dispute I mean basically what happens here. You've got look you got two Allegations that somebody has made complaints that were Derogatory to Pat one one called passive Asian women that was Tiersky supposedly and dr. McGrath who made some comment about The your client could possibly find work within the Indian community or something But that was actually quite a number of weeks before all of this took place Then you have some obviously Concerns about the length of time it takes to treat patients and Ultimately it results in a due process hearing that you may have some some issues with respect to as to how that was handled but It even it seems here that it is There's not a whole lot that you have Other than you know one could argue straight comments. I don't I'll let counsel discern what that what they think that is but Doesn't seem to be a whole lot here to base of much of a case on well your honor. I Respectfully disagree with you I mean these cases are difficult And we have McDonald Douglas framework because evidence is extraordinarily difficult to come by of discriminatory intent you must infer intent from the circumstances in these cases, and that's permissible under the rules and The district well if you're going to do with Donald Douglas and the court you know focused on the second and fourth Prongs which was where she qualified, and I guess that there's It's a low burden, but there's certainly some question that the other side has brought up and then two were others in this protected class treated In a different way than she was outside the protected class outside the private classes Yeah, wait. What did you show in terms of the comparators? Because here we have a woman who took her time and I guess we're talking March and Did the testing but then it goes on and she really doesn't contact a supervisor until July. Do you have comparators where? people engaged in that conduct and then You know there were no ramifications I will answer that question your honor, but I beg you that those are not the facts of the case. You just said that She waited until July to seek supervision That is absolutely disputed and the district court in fact found there to be a disputed fact as to whether she sought supervision from dr. Tiersky There's no dispute she saw supervision from Dumont right away She sent an email and then he instructed her what to do she did it she contacted him as soon as she was done She was done the end of March she contacted him in June. Oh, there was a delay There's no doubt that there was a delay and comparators also engaged in a similar delay however is that in the record? Where is that in the record at her certain my client certification specifically a paragraph five of her certification? She set forth that I know all these other students in my class there was only seven other students Okay, they they were tardy in getting their work done but in terms of the supervision that's required under the handbook did they have the similar lack of Pursuit of supervision as she did yes I mean the records themselves show that on a certain date with regard to patient one and patient two there are very different situations Exactly patient one I think your honor is focused on the fact that the testing was done And then there was a lag of time between completing the report and returning it the records with regard to the comparator Or show the same lag of time and even greater lags of time in that situation and the district court We are set specifically in the record. It's specifically in the record with regard to the records that were attached concerning I believe the students initials are ED EC RR and the one other student their records regarding when their testing was performed is attached in the appendix with their initials And how about they're seeking supervision? Again that there was no Allegation that the that my client failed to seek supervision with regard to patient one well said she failed to handle the situation Appropriately that she handled the situation badly which to me says she knew she was having a difficult pregnancy She she had done the testing she did not return a phone call And she didn't come to tell her supervisor of this problem He thought that since a lot of patients drop out That that's what happened to patient one that patient one just dropped by the wayside Patient one was languishing Agreed and then the analysis becomes well if she broke that rule the patient was languishing therefore She broke the rule concerning the deadline We showed that other students also broke that rule concerning the deadline and we're just talking about the prima facie case here I mean she showed that she was treated differently with regard to patient ones The allegations levied against her with regard to patient one which was simply you were late That was it then in the course of patient one being remedied Dr. Tiersky came forth and said I Just found out about patient two. I can't believe she never told me about this I didn't know about it from day one and it was assigned six months ago There's a lot of factual dispute that happened with patient two and that steamrolled her and then once that happened dr. Tiersky instantly repeated that to the entire faculty considering the situation and the district court found that there's substantial evidence in the record To suggest that that was a misrepresentation. I mean after all she assigned herself as supervisor She was in the class on a weekly basis with miss meta. All they discussed were the testing cases It seems highly unlikely that pile never brought this up to her and pile swears that she did so That Allegation is cited by FDU as the primary reason why pile was Punished that's in the record The complaint here that she should not have been put on a remedial plan She resigned from the program Your honor. I think the issue in the case ultimately if we ever reached it would have been constructive termination because if you get into the Conditions that FDU wanted to impose on her it was don't take any other classes except go repeat the same course with dr Tiersky whom you were just told by your advisor is a racist or maybe a racist or maybe motivated by race and has it out for you Who could really tolerate those conditions that seemed like a recipe for a disaster? so she mitigated her damage in fact by achieving a Master's from FDU based on the work. She had already done and has since completed her PhD at a different University What about the situation with the hearing that she was provided? What what is your contention with respect to that? That's most relevant to the breach of contract claim I think the New Jersey appellate courts have made clear that we need to focus in on that claim Whether or not FDU acted in good faith and followed its own procedures There's no doubt. We find this was an academic and not a disciplinary Situation what what was lacking here that was required? Absolutely your honor under the I believe it's a student bill of rights at a 609 it says that You know list a pamphlet of rights that the student is allowed or required to Be apprised of and in this case the only way that those rights would not have applied is if she just flat-out admitted it when confronted By dr. McGrath and said yeah, I did it all. I'm sorry. I never told dr. Chersky about patient one And I ignored phone calls from patient two. That's not at all what she said She said very clearly and this is in the record too. I am I am I take responsibility for being late. That's all I'm sorry about it now. She appeared at the hearing. No actually there was no hearing this was an informal meeting That's right, but did she get and written notice of what was going to be put for no I don't believe well, maybe you are I believe there was an email on the record But she knew about it from professor Gibbs who had told her she was going to go to the meeting So what process was she entitled to that you didn't get an actual hearing where she could have been represented by someone although the plan says other than an attorney To present witnesses and actually cross-examine them because if that happened dr. Tiercy would have had to sit there and say I never even knew about patient one well dr. Tiercy you assigned patient one to yourself you were in the class with pile the whole time You're saying this is the primary reason why you're imposing these severe sanctions It's just not fair the evidence doesn't support your version of events, but that never happened, so we don't know The other claims in the case I think the district courts holding with regard just to whether or not the statement alleged To have been made by dr. McGrath was susceptible to the famatory meeting. I it's clearly erroneous I mean to claim that a psychologist or a putative psychologist is a threat to public safety is Defamation per se had she held the license well, you know it has to be factual Clearly that's a statement of opinion is it not Sure, your honor. I think so, but that issue wasn't addressed by the district court We haven't briefed that we that wasn't raised as a defense It was just simply whether or not that statement taken by itself is capable of being interpreted in a defamatory way And I don't see how it couldn't be it's definitely not saying anything positive I wouldn't want to go to treatment with psychologists about whom I've heard such a thing from a dean of a university So you're saying the district court should have addressed the issue of whether it was factual or an opinion it never came up And I assume you take issue with the district courts Ruling regarding the Statement that it was another You know another theory of liability I Can't explain it. It certainly wasn't it was just used as evidence in the case She cited the district court site is completely distinguishable where an expert changes his theory at the last minute. It's not what we did here We'll hear from you Good morning, your honors May it please the court Nicole Pierce on behalf of the defendant appellees fairly Dickinson University and dr. Robert McGrath With all due deference to my adversary. I realized that he characterizes this case is one that's all about inferences I would disagree with that I may not need to be all about inferences because you have two statements That I mean that's we see a lot of appeals from summary judgments in discrimination cases a lot of universities, too And rarely do you have you know specific statements that? You know reveal certain anonymous and here we do we have two of them And you know, so I'm not sure whether we're talking about inferences or whether we're talking about direct evidence Well addressing the two statements the one statement that is purportedly attributed to dr. McGrath is one that was made in the context I would first say that I think it's mischaracterized in terms of what dr. McGrath said, but giving the inference And I'll benefit to miss Neda It was made in the context of a semester evaluation that took place in December of 2007 That is more than eight months removed from the challenged course of conduct that's at issue here Which is when the faculty met with miss made a after she failed to provide adequate patient care on a whole variety of levels not simply in terms of being Delayed you may be right on that one, but the the alleged comment to Tiersky is certainly more So that point that one your honor, and I apologize To step on your question the that one is problematic on a whole host of levels as well. There is a There's a an assertion by dr. Gibbs that she overheard dr. Tiersky making the comment that's attributed to her That is undated. It is unclear when it was made. It was not attributed to her in the context of a faculty meeting And yeah, but that's what a jury should size up and a jury maybe should also size up You know Gibbs view and emeritus professor that there's a witch hunt going on here Well, I think your honor what should go to the jury is if there are genuine issues of material fact and Here it is our position that there are no genuine issues of material fact meaning Facts that would lead to a different outcome than what the district court found here Well Tiersky said she didn't say it and Gibbs say she did and that's pretty material fact Well, it's Gibbs view and emails that there's something going on here. You know she's a really really good student We have a problem with you know minorities and You know she's not being treated fairly, and you know there's there's a lot of evidence here I'm not saying that there aren't some factual disputes What I am saying is that when you look at what is undisputed and what what plaintiff for the burden of proving? There was no genuine issue of material fact where the plaintiffs even if you give her all benefit of the doubt Would have met a prima facie case of discrimination Let's say that there Let's say that we conceded the statement that is attributed to dr. Tiersky There is no evidence contrary to what my adversary referenced earlier There is no documentation that there were comparably situated students that were treated differently But but sometimes when you're assessing a situation such as this at the summary judgment level you don't you know if there's sufficient totality circumstantial evidence of discrimination There's cases that say the plaintiff doesn't have to strictly satisfy the burden shifting which applies at trial I Understand that and I think if there's a convincing mosaic and there is exactly if there's a strong I understand that there's a strong pattern of Conduct and and and comments, but to judge Ambrose Comment earlier. I think that the two comments that are pulled out of context and we would assert them as characterized But even if we took them for what they are I think that they fairly fall within the rubric of stray remarks And if you look at the undisputed facts with regard to the failure of the plaintiff to render adequate patient care I think that it is Undisputed that she did not meet the professional and academic Standards that were clearly laid out that she was required to meet and that she has Unfortunately Refused to take responsibility for her inadequate patient care and instead has sought to blame Her pregnancy her supervisors other students in the course She has not once demonstrated responsibility for and other students in the course. No no no she she always looks to Couch what she has done as somehow being Not her fault and you either because that but then we have gifts has a very high view of her and to some extent the situation of her not Doing her work because of a difficult pregnancy and not coming forth with that explanation right up front because of religious reasons kind of feeds into the cultural situation we have here that Perhaps university needs to be more more sensitive to me And I there is no doubt that that you know that I would have you would have contacted The professor or other people you know 80% of the population might have contacted him, but no jury might look at this differently Your honor I would just emphasize that this is a student who was in a rigorous PhD level graduate program That she is held along with the rest of the students in the program to a high level of expectation high professional standard She was in her second year if she graduated from this program that she had decided to simply retake the practicum and demonstrate that she was confident and able to Accomplish what was required of her she would have been out in the real world as a licensed psychologist Tackling difficult issues with her with her patients and at the same time juggling real-life responsibilities Yeah, the question of rigorousness here could rise and fall on Tierski how Tierski in fact impacts a jury as to whether it comes across at this this class You know really didn't have to do it that quickly, and it's okay. Take your time Supervision we don't know the level of supervision that was there You know a lot of things are in handbooks that don't happen Granted she was you know she didn't do things in a timely manner, but then again if there's a witch hunt then you never know There is simply no evidence in the record and my adversary wouldn't be able to point to any documentation that there were other students in the program that had Comparable situation where they were delayed in rendering test results without adequate supervision for example Might be interesting to have Gibbs Testify as to why Gibbs was so concerned That there might be a witch hunt That people weren't taking into account this person's the culture that she was from the fact that she was pregnant I would emphasize here that when Miss Maynard was presented with the facts of the inadequate patient care that she rendered She did not provide a response and that meeting took place in July of 2008 She may be a passive person who doesn't who doesn't respond well to those kinds of things I mean I've had situations where you you meet with people and and they don't they don't readily have a response Your honor if I could make an analogy Okay as a clinical student. She was operating under the licenses of Licensed psychologists and there are professional standards That the students and those licensed psychologists are held to in order for her to be able to operate In that manner under the statute that governs that program I Can think of a similar program that I engaged in when I was a law student and I was not a practicing lawyer yet But I had the opportunity to appear in court because I operated under a supervising attorney who was admitted to the bar if I did not consult with that supervising attorney and then just appeared in court or decided to miss a deadline because I Culturally was passive or I somehow was having a difficult time But just hid under the carpet and didn't I just decided to not raise the issue Well, I Think we need to look at the objective Facts and the standards that this look this student Took an ethics course that focused specifically on the standards that are applicable to her program She had a 3.6 GPA in the academic portion Classroom portion of the program the clinical component is just as integral She was in a PhD program to be a clinical psychologist The clinical program was as academic and as important to what she was being taught and trained to do if she had stayed in The program and graduated. I listen to the question of the hearing that she Should should she have been afforded a hearing here? So I'm gonna make the distinction between what? Mr. Light caused the student Bill of Rights what he's actually referring to is the Student Code of Conduct, which is a different set of Processes that applies to disciplinary action in this case. This was a joint Faculty decision. This was not dr. Tiersky on her own. This was not dr. McGrath on his own There was a faculty meeting that was held in August of 2008 where dr. Gibbs was present She was able to voice these concerns that you that the court has raised but on the faculty of the program reached a joint decision that they thought a remedial program a remediation was not only fair, but it was necessary to ensure that she would be able to Demonstrate that she could render adequate patient care So the manual says that faculty any problems identified to the student should be presented in writing There was an email that went out prior to the faculty meeting that took place in July and that did lay out for Miss Metta what the concerns were with her failure to render adequate care and As a matter of fact it lays out all that it did it did. Where's that in the record? I can provide the court with I saw an email, but it was very brief Talked about lateness It seemed the lateness Didn't say I'm sorry. She didn't hear what she said. Oh neither appendix 298 Your honor. Can I just double-check the appendix? I Was wondering if that's the email your 250-251 says there have been some real violations of professional standards here Other email says our main concern is not that you fell behind that can happen to anyone Our main concern is how you responded to a demanding situation But none of them really I mean the the handbook requires pretty specific and clear allegations That I don't think and also provide information Specifying the sources of the information with the student being afforded an opportunity to consult with the faculty members involved You Can get that to us later if you wish I'm just not sure that the handbook was complied with maybe Well, your honor There was a requirement that something go out in writing and then and that the student be notified of what she was concerned with The one problems identified to be presented writing faculty members providing significant information relevant to the students evaluation will provide such evaluation It's completely as possible Specifying the source students should be afforded an opportunity to consult with the faculty members Involved so the email that I that I can put my hands on now I can alert the court if there's another one, but there was an email that went out on July 9th Which is that a 250 that I? Recognize is not it's not particularly lengthy right, but then there was a follow-up meeting where dr. McGrath dr. Chersky and dr. Dumont met with miss Meta and went through in detail what the concerns were with her performance and besides lateness What were they? failure to seek out supervision failure to render patient care failure to maintain Communication with the patient so that the patient understood where her case stood as the record Demonstrates this was initially a law student who was coming to the clinic to seek an assessment of a potential learning disability She was looking to take the LSE And she needed to have it done by May she heard nothing until late May or early June until she called then when the faculty met then miss made a Realized the hot water I guess that she was in and the and the fact that The faculty realized that she hadn't been following through on what it was that she was supposed to be doing and in fact in an Email that post dated the meeting that was held on July 15 That was the very first time that miss made a raised The request to dr. Tiersky that she provides in supervision with regard to patient to she sent that email on July 24th because she was clearly on Notice that her conduct was going to be scrutinized and that it was going to be held to the standards that were set forth in the various Guidelines and protocols never got anything in writing with respect to the whole tears key patient to aspect Did she the emails here preceded that so they did proceed that time frame when they had the here or the meeting later She really hadn't been given written information about that That was provided in the meeting that she had with the faculty members, but she clearly was on notice and that she she Sent out a notice requesting dr. Tiersky to provide supervision with regard to patient to I would also say that there were emails that posted at the faculty meeting that took August and then there was additional emails where dr. Gibbs was again heard in support of miss made a the remediation was set on in early September and Under the appropriate procedures that actually govern an academic decision Here is what miss made it was entitled to she was entitled to submit a request for an appeal She was if she wanted to request an appeal. She was required to submit that to the doctoral faculty She would have then been given the opportunity to select a faculty member of her own choosing The doctoral faculty would have selected a faculty member of its own choosing and then those two together would have selected a third member to hear Her appeal out. She never requested that appeal She would have been afforded it if she had asked for it and instead she elected to voluntarily resign from this program on September 4th I realized that I'm out of time. Thank you I The case is all about inferences is because as you brought up cases like The one quoted where a convincing mosaic may override the need to meet the strict four-step guideline McDonnell Douglas the question is the question here is is there enough? Points in the mosaic to actually make a mosaic and what one just Question why didn't she just retake the practicum? I mean, she apparently had done well in the classroom She was having some difficulties by people, you know by numerous people saying that she wasn't really responding well in the clinical part of the program and That's where the rubber meets the road. That's where you deal with the real patients and they were concerned about that Why not just retake it because she was told by her trusted advisor Dr. Gibbs that this woman has it out for you You're gonna go sit under her class again and the only way you're allowed back in the program full-time is if she approves you after you sit through the clinical practicum again with Her for a year and she was told that this woman has a racial bias I wouldn't advise my daughter to go sit through that again leave go somewhere else Well, maybe maybe what you do is you find out if there can be somebody else involved in the process There's a number of people besides Tersky after you can handle this a number of different ways judge and I think Importantly that goes it might go to the proximate cause of certain damages. I mean she the problem is